
Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle, Sr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1340 | **DATE** | 8/2/2002 |
| **CASE TITLE** | United States of America vs. $30,670 in United States Funds | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The court grants Plaintiff's motion to amend judgment pursuant to Federal Rule of Civil Procedure 59(e). See attached revised order and opinion. The court orders the clerk to enter final judgment pursuant to Federal Rule of Civil Procedure 58 on the amended order and opinion of August 2, 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 0 5 2002 | |
| | Notified counsel by telephone. | date docketed | |
| X | Docketing to mail notices. | | |
| X | Mail AO 450 form. | docketing deputy initials | 26 |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | 02 AUG -2 PM 3:07 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> $30,670 in UNITED STATES FUNDS, ) <br> ) <br> Defendant. ) | Case No. 01 C 1340 <br> HONORABLE CHARLES R. NORGLE |

**ORDER AND OPINION**

CHARLES R. NORGLE, District Judge:

Before the court is Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted.

**I. BACKGROUND**[1]

This case involves an action under the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983(c)(1). The facts of this case are not in dispute. (See Claimant's Mem. of Law in Resp. to Pl.'s Mot. for Summ. J., pg. 1.) On September 5, 2000, claimant, Antonio Calhoun ("Calhoun"), presented himself at the America Trans Air ("ATA") Airlines ticket counter at Midway Airport i Chicago. Calhoun purchased a one-way ticket to Phoenix, Arizona on ATA for $305.00. Calhoun paid cash for the ticket, which was for a flight the same day. As Calhoun proceeded through security and to the boarding area for the flight, he was stopped by two Drug Enforcement Administration ("DEA") agents. The DEA agents informed Calhoun that they received an anonymous tip that an

---

[1] The court takes the facts from the parties Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

26

individual, fitting Calhoun's description, would be traveling through the airport with a large amount of United States currency.

The DEA agents began to question Calhoun and discovered he had $1,700 contained in a duffle bag that he carried. After the discovery of the $1,700, the DEA agents asked Calhoun, "are you sure there's no more money on you?" To which Calhoun replied "No." At this point, one of the DEA agents made contact with Calhoun and felt one or more bundles under Calhoun's clothes. Calhoun agreed to accompany the DEA agents to an office, where the agents found twenty-nine bundles of United States Currency contained within a women's girdle on Calhoun's person. The DEA agents then took these bundles of money and placed them in one of several suitcases in the office. At the request of the DEA agents, a Cook County Sheriff's Police Narcotic Detector dog was brought into the office to conduct a narcotics sweep. The dog alerted to the suitcase which contained the bundles of money.

Calhoun claimed at the time that he was taking the money to Phoenix to make a new start with a girlfriend, and that the money was what he had saved over a three year period, from 1998 to 2000. Calhoun was released and the DEA agents confiscated the money. The United States filed a forfeiture action based on the seizure of $30,670 in United States currency from Calhoun's person. The Government now moves for summary judgment.

## II. DISCUSSION

### A. Standards for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield

2

v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries. Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. See Fed. R. Civ. P. 56(c); Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); First Nat'l. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Amercian Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994) (citing

Anderson, 477 U.S. at 249-50; 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 2712, at 574-78 (2d ed. 1983). Not all factual disputes warrant the denial of summary judgment; only disputes as to facts material to the substantive claim require resolution by trial. Smith v. City of Chicago, 242 F.3d 737, 744 (7th Cir. 2001) (citing Anderson, 477 U.S. at 247-248).

**B. Forfeiture**

The United States may seek the forfeiture of seized funds under CAFRA. See 18 U.S.C. § 983(c). As the Government correctly points out, forfeiture of property is appropriate if the government demonstrates, by a preponderance of the evidence, that the property is subject to forfeiture. See 18 U.S.C. § 983(c)(1). Specifically, CAFRA provides: "In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property . . . the burden of proof is on the Government to establish by a preponderance of the evidence, that the property is subject to forfeiture[.]" 18 U.S.C. § 983(c). United States currency can be subject to forfeiture if the currency were the proceeds, or intended to facilitate, an illegal drug transaction. See 21 U.S.C. § 881(a)(6); see also United States v. $506,231 in United States Currency, 125 F.3d 442, 451 (7th Cir. 1997). In order to establish that the seized funds were the proceeds of, or intended to facilitate, an illegal drug transaction, the United States must demonstrate a nexus between the seized property and illegal drug activity. See $506,231, 125 F.3d at 451. Evidence gathered after the filing of the complaint may be used to meet the United States' burden. See 18 U.S.C. § 983(c)(2).

The government argues that five factors provide a nexus between the seized currency and illegal drug transactions: (1) Calhoun's purchase of a one-way ticket on September 5, 2000; (2) the large amount of cash hidden within a girdle on Calhoun's person; (3) Calhoun's lack of legitimate

4

sources of income to accumulate the seized funds; (4) Calhoun's implausible and inconsistent statements to DEA agents and in deposition testimony; and (5) the alert by the Cook County Sheriff's Police Narcotics Detection dog to the seized funds. Calhoun argues that the Government's assertions are "nothing more than extrapolated speculations stemming from innocuous facts," but offers no evidence of his own to support that counterclaim. (Claimant's Mem. of Law in Resp. to Pl.'s Mot. For Summ. J., pg. 4.) The court finds the Government's argument persuasive, especially when the totality of the evidence presented is examined. The court will address each of the Government's five factors in turn.

First, Calhoun's purchase of a one-way ticket. A purchase of one-way ticket does not itself indicate the connection to illegal narcotics transactions; Nor would the fact that Calhoun did not check any luggage necessarily indicate such a connection, even though the Government submits case law on this point. See Florida v. Royer, 460 U.S. 491, 502 (1983); United States v. McCarthur, 6 F.3d 1270, 1278 (7th Cir. 1993). However, when the evidence submitted by the Government related to Calhoun's travel is examined, it shows a pattern that is consistent with illegal narcotics transactions. (See Pl.'s Local Rule 56.1 Statement of Facts, Ex. D.) From July 1, 2000 up until Calhoun was interdicted on September 5, 2000, he traveled from Chicago's Midway Airport to Phoenix and back seven times. (See id.) Calhoun purchased 14 individual one-way tickets in the span of two months. (See id.) This includes Calhoun's travel on one day, July 9, 2000, from Phoenix to Chicago, and back to Phoenix. (See id.) This frequent pattern of travel and use of cash for one-way ticket purchases is indicative of drug transactions.

The second and third factors involve the large amount of cash found in Calhoun's possession, as well as the lack of legitimate sources for such an amount. As the Seventh Circuit has stated, "the

5

existence of any sum of money, standing along, is not enough to establish [by a preponderance of evidence] that money is forfeitable." $506,231, 125 F.3d at 452 (other citations omitted). "No court in the nation has yet held that, standing alone, the mere existence of currency, even a lot of it, is illegal." $506,231, 125 F.3d at 452. Calhoun told the DEA agents that the seized funds were the accumulation of savings and gambling earnings. However, the Government submits evidence of Calhoun's finances, specifically tax returns and reported expenditures for the years 1998, 1999, and 2000, which contradict Calhoun's story. (See Pl.'s Local Rule 56.1 Statement of Facts, ex. I, J, K, and L; Pl.'s Mot. for Summ. J., pp. 4-7.)

Calhoun's federal income tax returns for 1998, 1999, and 2000 list an adjusted gross income of $27,120.00, $14,086.00, and $19,109.00 respectively. (See id.) Additionally, Calhoun was awarded an earned income credit and tax refund in 1998 of $4,473 and 1999 of $4,910. (See id.) Calhoun's finances also contain a benchmark of November of 1998 when he filed for bankruptcy. (See Pl.'s Local Rule 56.1 Statement of Facts, Ex. I.) Calhoun's bankruptcy statement under oath showed that he had no cash or savings at the time of filing. (See id.) Thus, Calhoun's financial picture can be accurately developed from November of 1998 to September 5, 2000.

Using Calhoun's bankruptcy as a starting point, Calhoun earned only $4,520 for the rest of the 1998.[2] (See Pl.'s Local Rule 56.1 Statement of Facts, ex. I, J, K, and L; Pl.'s Mot. for Summ. J., pp. 4-7.) Adding this to the adjusted gross income from 1999 and 2000, as well as the earned

---

[2] Calhoun's earnings after bankruptcy in November of 1998 is based on the adjusted gross income that he listed on his 1998 federal income tax return. As stated previously, Calhoun listed an adjusted gross income of $27,120.00 for 1998. When this is broken down into a monthly basis it equals $2,260 per month. Thus, after the November bankruptcy, Calhoun earned $4,520 the rest of the fiscal year 1998.

income credits and tax refunds, Calhoun's total income from November of 1998 to September 5, 2000 equals $47,098.00. (See id.)

The Government also submits evidence of Calhoun's expenses over the same period of time, November of 1998 until September 5, 2000. Based on Calhoun's deposition testimony and financial documents, the Government estimated his total expenditures for the period at $73,492.94. (See Pl.'s Local Rule 56.1 Statement of Facts, ex. C, I, J, K, and L; Pl.'s Mot. for Summ. J., pp. 4-7.) Calhoun's expenses were based on his daily costs, such as rent and utilities, as well as his air fares to Phoenix, and the seized money itself. These expenditures clearly exceed the $47,098.00 that Calhoun claims to have earned during this same period. (See Pl.'s Mot for Summ. J., pp. 4-7.) There is a difference of $26,394.00 in expenses exceeding Calhoun's stated earned income. Thus, Calhoun cannot have saved the $30,670.00 that was seized.

Fourth, Calhoun's inconsistent and implausible testimony. On September 5, 2000, when Calhoun was stopped, he voluntarily answered several questions posed by the DEA agents. Calhoun told the agents he was moving to Phoenix to start over with his girlfriend. (See Pl.'s Local Rule 56.1 Statement of Facts, Ex. C.) This answer was implausible considering several of Calhoun's actions and omissions. Calhoun drove his vehicle to Midway on September 5, 2000, which would indicate that he was returning. (See id.) Additionally, Calhoun had not brought any luggage, much less any of his personal possessions, another indication that he had no intention of moving. (See id.) In fact, when questioned Calhoun could not remember the last name of his girlfriend in Phoenix, with whom he stated he wished to start his life over. (See id.) Finally, and most significantly, Calhoun made no arrangements for his two children he claimed were living with him to travel to Phoenix. (See id.)

All of these acts and omissions contribute to the implausibility that Calhoun was moving to Phoenix to start over.

Calhoun also made several inconsistent statements. Calhoun stated he had traveled to Phoenix only three times, when the airline records show that he had been to Phoenix and back to Chicago seven times between July 1, 2000 and August 27, 2000. (See Pl.'s Local Rule 56.1 Statement of Facts, Ex. C, and D.) Additionally, Calhoun gave inconsistent statements about his accommodations in Phoenix. Calhoun stated he stayed at a hotel on 55th and the expressway in Phoenix, either a Holiday Inn or Hamptons Inn. (See Pl. Local Rule 56.1 Statement of Facts, Ex. C.) In fact, Calhoun stayed at the Travelers Inn. (See Pl. Local Rule 56.1 Statement of Facts, Ex. H.) And, as previously discussed, Calhoun gave inconsistent statements about the source of the seized funds.

Fifth and last, the Government cites to the alert by the Cook County Sheriff's Police Drug Detection dog in response to the seized funds. As the Government correctly states, a reliable drug detection dog can establish by a preponderance of evidence that money was linked to illegal drug transactions. (See Pl.'s Local Rule 56.1 Statement of Facts, Ex. O.); United States v. Limares, 269 F.3d 794, 798 (7th Cir. 2001). The evidence submitted by the Government clearly establishes the drug detection dog, in this case Cook County Sheriff's Drug Detection Dog Bax, is reliable. See Limares, 269 F.3d at 798 (discussing establishment of reliability at 62%). Thus, the fact that an alert was registered by a reliable drug detection dog demonstrates that the money was linked to illegal narcotics transactions. See Limares, 269 F.3d at 798.

Considering the totality of the evidence, the Government has shown by a preponderance of the evidence that the $30,670 is subject to forfeiture and that Antonio Calhoun's claim should be rejected.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted.

IT IS SO ORDERED

ENTER:

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 8-2-02